UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CATHERINE WEINSTOCK,

    Plaintiff,

v.

                              Case No. 8:19-cv-2979-T-33AEP

JASEN LADAIR HARVEY, and
CATHARINE HARVEY

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

Before the Court is Plaintiff's, Catherine Weinstock's, ("Weinstock") Motion for Default Judgment Against Jasen Ladair Harvey and Catharine Harvey (Doc. 28) ("Motion"), and Supplemental Memorandum in Support of Motion for Default Judgment Against Jasen Ladair Harvey and Catharine Harvey (Doc. 35) ("Supplemental Memorandum"). Upon consideration, it is recommended that Weinstock's Motion for Default Judgment (Doc. 28) be denied.[1]

### I. Background

Defendants own and operate a tax return preparation service under the name Harvey's Tax Service at 809 E. Alsobrook Street, Plant City, Florida 33563. (Doc. 1 ¶ 7). Weinstock retained the Defendants in December of 2017 as a tax return preparer for the filing of her Form 1040 Income Tax Return for the tax years of 2014, 2015, and 2016. (Doc. 1 ¶ 10). Weinstock made an initial payment of $750.00 to Defendants and agreed to pay Defendants a total fee

---

[1] The district judge referred the matter for issuance of a report and recommendation (Doc. 29). *See* 28 U.S.C. § 636; M.D. Fla. R. 6.01.

based on 15% of the amount of the tax refund. (Doc. 1 ¶ 10; Ex. C).[2] Defendants used the "Creative Resource Financial Recovery" process to prepare Weinstock's tax returns and to "significantly increase the amount of the tax refund [that] would be received from the Internal Revenue Service." (Doc. 1 ¶¶ 11 & 20).

Weinstock subsequently received a tax refund notice from the Internal Revenue Service ("IRS") dated December 11, 2017. (Doc. 1 ¶ 20; Ex. D). The refund notice detailed the IRS's calculation of a refund in the amount of $137,637.16, which was calculated based upon an overpayment for the 2016 taxes in the amount of $157,472.00, minus $20,886.60 of an unpaid balance for the 2011, 2012, and 2013 tax years, plus $1,051.76 of interest owed to Weinstock. *Id.* Ten days later, Weinstock received a "Notice of Tax Due on Federal Tax Return" stating that instead of the overpayment of $137,637.16, Weinstock actually owed $157,537.00 to the IRS for her 2016 tax return. (Doc. 1 ¶ 13, Ex. E). The Notice also stated that a penalty had been assessed against Weinstock for $31,507.40. *Id.* Weinstock alerted Defendants about the Notice and requested that Defendants resolve the issues with the IRS, but Defendants failed to do so. (Doc. 1 ¶ 14; Ex. F). Weinstock subsequently received a "Notice of Jeopardy Levy and Right of Appeal" from the IRS dated January 20, 2018, stating that the tax return prepared by Defendants was found to be a frivolous return. (Doc. 1 ¶ 15; Ex. G). On February 26, 2018, the IRS filed a Federal Tax Lien against Weinstock with the office of the City Register, City of New York. (Doc. 1 ¶ 16; Ex. H).

Weinstock hired other tax professionals to work with the IRS to reach a resolution, and sent a demand letter to Defendants requesting that they tender $100,000 for the fees and

---

[2] It should be noted that Weinstock inadvertently misidentifies her exhibits throughout the Complaint. For example, paragraph 10 of the Complaint incorrectly states that "[t]he email setting forth this fee arrangement is attached hereto as "Exhibit D," when in fact the email is attached as "Exhibit C."

2

damages that Weinstock had incurred. (Doc. 1 ¶ 18; Ex. I). In the demand letter, Weinstock's counsel addressed Jasen Harvey saying that "[d]uring the course of your representation, you orchestrated the filing of a 2016 tax return which the IRS deemed improper because the federal withholding tax shown was wildly inflated." (Doc. 1, Ex. I). Weinstock's counsel gave Jasen Harvey two weeks to comply with the demand. *Id.*

Jasen Harvey responded to the demand letter with a letter entitled "Constructive Notice of Conditional Acceptance" and an affidavit in which Jasen Harvey claimed that there was no evidence demonstrating that he had submitted a false 2016 tax return on Weinstock's behalf. (Doc. 1, Ex. J). Jasen Harvey requested proof that the 2016 Form 1040 Income Tax Return was erroneous and unlawful, proof that the Defendants committed misconduct, and proof that "unlawful . . . fraudulent . . . conduct or malpractice was performed against Ms. Weinstock." *Id.* He also requested that Weinstock cease "[a]ny and all efforts to slander and defame the character of [Jasen Harvey]." *Id.* Finally, Jasen Harvey demanded that Weinstock cease any legal proceedings against Defendants and that Weinstock pay Defendants $300,000 in pre 1964 gold or silver coin value. *Id.* Subsequently, Weinstock initiated the instant action seeking compensatory and punitive damages, as well as costs expended, including attorney fees, based upon the alleged fraudulent and negligent actions of Defendants in preparing Weinstock's Federal Income Tax Return. (Doc. 1 ¶¶ 18 & 20).

In Count I of the Complaint, Weinstock asserts a claim for "Fraudulent Preparation of Federal Tax Return" (Doc. 1 at 2). Specifically, Weinstock asserts that:

> [a]s a result of the fraudulent actions and representation of Defendants, Plaintiff has incurred significant tax penalties and interest levied by the Internal Revenue Service and has been required to hire other tax professionals at significant expense in working with the Internal Revenue Service to reach a resolution, the total amount of said damages and expenses exceed the amount of $75,000.

(Doc. 1 ¶ 17). Namely, Weinstock alleges that Defendants used the Creative Resource Financial Recovery process to "significantly increase the amount of the tax refund [that] would be received from the Internal Revenue Service." (Doc. 1 ¶ 11).

In Count II of the Complaint, Weinstock asserts a claim for "Negligence." (Doc. 1, at 4). Weinstock avers that "Defendants Jasen LaDair Harvey and Catharine Harvey had a duty to accurately and timely file the 2014, 23015 [*sic*] and 2016 Form 1040 Income Tax Return for Plaintiff Weinstock." (Doc. 1 ¶ 20). Weinstock also asserts that:

> [a]s a result of the errors and omissions of Defendants, Plaintiff has incurred significant tax penalties and interest levied by the Internal Revenue Service and has been required to hire other tax professionals at significant expense in working with the Internal Revenue Service to reach a resolution, the total amount of said damages and expenses exceed the amount of $75,000.

(Doc. 1 ¶22).

After Weinstock served Defendants, Weinstock moved for entry of default judgment against each Defendant on January 20, 2020. (*See* Doc. 8). On January 23, 2020, the Court subsequently denied the motion because Weinstock prematurely requested a default judgment without first seeking the entry of a default under Rule 55(a). (*See* Doc. 9). Additionally, the Court questioned "whether Defendant Catharine Harvey was properly served pursuant to Fla. Stat. § 48.031(6)," and advised Weinstock to ensure that service was properly effectuated prior to seeking a default against Catharine Harvey. *Id.* Despite the Court's expressed concern, Weinstock immediately moved for entry of default against both Defendants. (Docs. 10 & 11). The Court granted Weinstock's Motion for Entry of Default as to Defendant Jasen Harvey, but denied the Motion as to Defendant Catharine Harvey. (Doc. 12).[3] The Clerk of Court

---

[3] Jasen Harvey was personally served at his residence, therefore, the Court entered the default as to Jasen Harvey. (Doc. 12). The process server first attempted to serve Catharine Harvey at her place of business, but the location was closed. *Id.* The process server subsequently left a copy of the service documents with an employee at a UPS store where Catharine Harvey

4

subsequently entered the default as to Defendant Jasen Harvey. (*See* Doc. 13). Weinstock filed a Motion for Default Judgment against Defendant Jasen Harvey and, after a hearing on the matter, the undersigned denied the Motion. (*See* Docs. 17 & 23).[4] Weinstock then moved for an entry of default against Defendant Catharine Harvey, which the Clerk of Court subsequently entered. (Docs. 25 & 26).

On March 17, 2020, Weinstock filed the instant Motion seeking the entry of a default judgment against both Defendants. (Doc. 28). Weinstock argues in the Motion that "Defendants Jasen LaDair Harvey and Catharine Harvey utilized a fraudulent tax preparation scam based on the depository agreement of depository financial institutions and further utilized a process entitled Creative Resource Financial Recovery." *Id.* at ¶2. On May 1, 2020, the undersigned conducted a telephonic hearing on the Motion to specifically address deficiencies identified by the Court in the Motion. During the hearing, Weinstock's counsel generally asserted that the Complaint contained a sufficient factual basis to support the fraud claim, and specifically referenced a separate case, *U.S. v. Harvey et al*, No. 8:20CV60 (M.D. Fla. filed Jan. 8, 2020), as additional support for Weinstock's default judgment request. *Id.* The undersigned also questioned why the Motion (Doc. 28) failed to make any mention about Weinstock's claim of negligence in Count II of the Complaint. *Id.* Notably, the undersigned advised Weinstock that absent an amended complaint with more detailed factual allegations relating to the alleged fraud, a default judgment would likely be unwarranted. *Id.* However, Weinstock requested the opportunity to address the Court's concerns, and thus filed a Supplemental Memorandum (Doc.

---

maintained an active private mailbox. *Id.* The Court concluded that Weinstock did not meet her burden of demonstrating that the service was adequate because the private mailbox was not the only address for Catharine Harvey in the public records. *Id.*

[4] At the February 25, 2020 hearing, the undersigned asked Weinstock's counsel if he would prefer to wait to seek a default judgment as to both Defendants. (Doc. 22). The undersigned also noted that the filing was deficient because it was missing legal citations and advised Weinstock's counsel to file a supplemental pleading. *Id.*

35) "to show that the elements of fraud have been sufficiently pled to support the granting of a default judgment."[5] Upon due consideration of the record, it is recommended that Weinstock's Motion for Default Judgment (Doc. 28) be denied.

## II. Legal Standard

"When a defendant has failed to plead or defend, a district court may enter judgment by default." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015) (citing Fed. R. Civ. P 55(b)(2)); *cf. Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014) ("Rule 55, governing 'Default; Default Judgment,' applies specifically to situations where the defendant or counter-defendant has failed to answer."). Following entry of a default under Rule 55(a), Federal Rules of Civil Procedure, a defendant is deemed to admit a plaintiff's well-pleaded allegations of fact, and, therefore, before entering a default judgment under Rule 55(b), a district court must ensure that the well-pleaded allegations in the complaint actually state a substantive cause of action and that a substantive, sufficient basis exists in the pleadings for the particular relief sought. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (citation omitted). Although a defaulted defendant is deemed to admit the well-pleaded allegations of fact, the defaulted defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (citation and quotation omitted). Rather, entry of a default judgment is only warranted where a sufficient basis exists in the pleadings for the judgment entered. *Surtain*, 789 F.3d at 1245 (citation omitted).

Courts assess pleadings in conjunction with a default judgment by a standard "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Id.* (citations omitted).

---

[5] Weinstock again failed to address her negligence claim in Count II of the Complaint, despite the Court specifically raising the issue during the hearing on May 1, 2020.

Namely, a court may enter a default judgment only where a pleading contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility exists "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Iqbal*, 556 U.S. 678 (quoting *Twombly*, 550 U.S. at 556). At all times, however, the decision to enter a default judgment remains within the discretion of the district court. *Hamm v. Dekalb County*, 774 F.2d 1567, 1576 (11th Cir. 1985) (citations omitted).

In a diversity case, such as this, the substantive law of the forum state applies. *S.-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*, 872 F.3d 1161, 1164 (11th Cir. 2017); *Sphinx Intern., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 412 F.3d 1224, 1227 (11th Cir. 2005) (citations omitted). Accordingly, to determine whether Defendants defrauded Weinstock during the preparation of her federal tax returns, the Court must look to Florida law. *S.-Owners Ins. Co.*, 872 F.3d at 1164. Under Florida law, the elements for a claim of actionable fraud are: "(1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party." *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984).

Under Rule 9(b) of the Federal Rules of Civil Procedure, "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To meet this standard, "the Plaintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364,

1380-81 (11th Cir. 1997) (citation omitted). Plaintiffs must also plead with particularity as to the "identity of the person making the misrepresentation and what [they] obtained thereby." *Terry v. SunTrust Banks, Inc.*, 493 F. App'x 345, 358 (4th Cir. 2012) (citation omitted). Additionally, when a case involves multiple defendants, "the complaint should inform each defendant of the nature of [their] alleged participation in the fraud." *Brooks*, 116 F.3d at 1381 (quoting *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777-78 (7th Cir. 1994)).

### III.     Discussion

Weinstock requests default judgment on her fraud claim in Count I against both Defendants. However, Weinstock's allegations of fraud are conclusory and fail to meet the specificity as required under Rule 9(b). Simply stated, Weinstock has not alleged any false statement concerning a material fact made by either Defendant that Weinstock relied upon to her detriment. Furthermore, Weinstock has not identified when or where any statements were made, nor the content and manner in which the statements misled her. Weinstock generally alleges that: (1) Weinstock hired Defendants to prepare her tax return; (2) Defendants utilized the Creative Resource Financial Recovery process to significantly increase the amount of the tax refund; (3) Weinstock initially obtained a refund of $137,637.16 from the IRS; and (4) the IRS then changed its' position and instead of getting a refund, Weinstock owed the IRS $31,507.40. (Doc. 1). Specifically, Weinstock alleges that Defendants "utilized a fraudulent or negligent tax preparation scam based upon the depository agreement financial institutions and further utilizing a process entitled Creative Resource Financial Recovery," and that "Defendants orchestrated the use of the Creative Resource Financial Recovery process to significantly increase the amount of the tax refund [that] would be received from the Internal Revenue Service." (Doc. 1 ¶¶ 8 & 11). Weinstock attached a document to the Complaint titled "Creative Resource Financial Recovery," which is allegedly an application to participate in the

Creative Resource Financial Recovery process. (Doc. 1, Ex. B). However, Weinstock does not allege nor identify any false statements in the Creative Resource Financial Recovery application, nor any false statements made by Defendants in connection with the Creative Resource Financial Recovery process. Notably, Weinstock failed to allege any specific facts regarding how the Creative Resource Financial Recovery process worked, other than that Defendants used it to significantly increase the amount of the tax refund for Weinstock.

In the instant Motion (Doc. 28), Weinstock asserts that the false statements and wrongful actions of Defendants are well documented in a completely separate case in *U.S. v. Harvey et al*, Case No. 8:20CV60 (M.D. Fla. filed Jan. 8, 2020) ("*Harvey*"), which is an action brought by the United States against Catharine Harvey, Jasen Harvey, and Harveys Tax Service to permanently enjoin them from "preparing, assisting in the preparation of, or directing the preparation of federal tax returns, amended returns, or other tax-related documents or forms, including any electronically submitted tax returns or tax-related documents, for any entity or person other than themselves." (*Harvey* Doc. 1 ¶ 1). In *Harvey*, the United States specifically alleged that "Defendants have a documented history of making fraudulent claims as part of a scheme to claim millions of dollars in bogus refunds," and that "[t]o attract customers, Defendants frivolously assert that their scheme to defraud the Treasury is not only legitimate, but consistent with biblical teachings." (*Harvey* Doc. 1 ¶¶ 9 & 10). Further, the United States alleged that the "Defendants' scheme is to generate fraudulent refunds by claiming astronomical amounts of bogus tax withholdings on returns they prepare," and that "Defendants have routinely invented fake income for their customers and made the nonsensical assertion that none of this income was ever paid to the customers, that all of it was instead withheld and paid over to the Treasury, that these withholdings exceed their customers' tax liabilities, and that the customers are therefore entitled to a refund." (*Harvey* Doc. 1 ¶¶ 23 & 24).

Weinstock is not a party in the *Harvey* matter, but Weinstock is referenced in the United States' Motion for Default Judgment in *Harvey* to exemplify Defendants' alleged fraudulent scheme to defraud the IRS. (*Harvey* Doc. 27 at 10-11). In the Motion for Default Judgment in *Harvey*, the United States asserted the following:

> For instance, on a tax year 2016 return prepared for Catherine Weinstock, Defendants claimed as withholdings all the funds that Ms. Weinstock deposited into her TD Bank account throughout the course of the year. There is a statement at the end of the return saying that Ms. Weinstock agreed to "lend" TD Bank those funds to help the bank "meet its daily depository quota with the Federal Reserve" and that the funds were "subject to income tax withholding." In a complaint Ms. Weinstock later filed with the IRS, she said that Jasen Harvey told her that "the terms of [TD Bank's] 'depository agreement'" allowed her "to claim these funds on my tax return." Ms. Weinstock's return also provides insight into Defendants' financial motivation for their brazen fraud. In particular, Defendants claimed a $157,472 refund for Ms. Weinstock. The IRS applied some of that amount to Ms. Weinstock's then-existing liabilities and erroneously issued her a refund check for the balance. Defendants attempted to charge Ms. Weinstock *$23,630*—or 15 percent of the $157,537 in bogus withholdings that led to the refund claim—for preparation of her return.

*Id.* (citations omitted). Clearly, the allegations in *Harvey* provide more details about Defendants' alleged fraudulent schemes and false statements. However, these details are not alleged in Weinstock's Complaint and the accompanying exhibits. As such, the Court may only consider the well-pleaded facts in the operative complaint, and may not consider supplemental evidence. *See Vertical Concrete Polishing, Inc. v. Xiaoyu Abrasive, Inc.*, No. 6:17-cv-31-Orl-41KRS, 2017 WL 9990576, at *1 (M.D. Fla. Nov. 30, 2017). Thus, the Court cannot rely upon the *Harvey* allegations to enter a default judgment against Defendants in this matter.

A careful review of Weinstock's Complaint and accompanying exhibits (Doc. 1) reveals that Weinstock has failed to properly plead a claim of fraud against Defendants. Weinstock has only alleged that Defendants used the Creative Resource Financial Recovery process to

10

significantly increase the amount that Weinstock would receive as her tax refund. She has failed to allege any facts describing the Creative Resource Financial Recovery process, how the Defendants used such a process, what false statements were made about the process to Weinstock, and whether the Defendants knew the statements were false when they made them to Weinstock. Further, Weinstock has failed to identify which Defendant made any specific false statement. Weinstock moves to have a default judgment entered as to both Jasen and Catharine Harvey but has not specified how each Defendant defrauded her.

Without such specificity, a default judgment for fraud on this record would be inappropriate. In her Motion, Weinstock relies upon *Harvey* to support her request for a default judgment and asserts that Defendant's fraud is well documented in the *Harvey* matter. (Doc. 28 at 4); *U.S. v. Harvey et al*, Case No. 8:20CV60 (M.D. Fla. filed Jan. 8, 2020). Weinstock conflates Defendants' alleged fraud committed upon the United States with the alleged fraud committed upon her. However, in *Harvey,* the United States alleged factual allegations describing with specificity how Defendants knowingly submitted tax returns with falsely claimed income tax withholds to induce the IRS to rely upon such withholds to pay an unwarranted tax refund. Here, Weinstock makes no mention in her Complaint of any false statements made to her regarding her income tax withholds. Although it is mentioned in the *Harvey* matter that Jasen Harvey told Weinstock that the terms of her bank depository agreement allowed her to assert certain tax withholds (*Harvey* Doc. 27 at 10-11), such a statement is not alleged in the Complaint in this matter. Accordingly, the Court is left without sufficient factual allegations to find that a false statement was knowingly made by either Defendant and that Weinstock detrimentally relied upon a false statement made by either Defendant.

11

It is also unclear whether Weinstock alleges a fraud claim or a negligent misrepresentation claim in Count I of the Complaint. In the event that Weinstock intends to allege a claim of negligent misrepresentation, then the well-pleaded facts in the Complaint must plausibly demonstrate that: (1) Defendant made a misrepresentation of material fact that he or she believed to be true but which was in fact false; (2) Defendant was negligent in making the statement because he should have known the representation was false; (3) Defendant intended to induce the Plaintiff to rely on the misrepresentation; and (4) injury resulted to Plaintiff acting in justifiable reliance upon the misrepresentation. *McGee v. JP Morgan Chase Bank, NA*, 520 F. App'x 829, 831 (11th Cir. 2013) (citation and quotation omitted). Similar to alleging a fraud claim, a claim of negligent misrepresentation also requires the heightened allegation of Rule 9(b), as negligent misrepresentation sounds in fraud. *McGee*, 520 F. App'x at 831 (citations omitted); *Linville v. Ginn Real Estate Co., LLC*, 697 F. Supp. 2d 1302, 1306 (M.D. Fla. Mar. 10, 2010)(finding that the requirements of Rule 9(b) applied to claims for negligent misrepresentation and fraud under Florida law). Thus, even if Count I is construed as a negligent misrepresentation claim, a default judgment would still be inappropriate given that such a claim requires a misrepresentation of material fact, and as discussed above, Weinstock fails to allege with specificity any such statement.

In Count II of the Complaint, Weinstock alleges a negligence claim against both Defendants. Under Florida law, to bring a claim of negligence, Plaintiff must demonstrate: (1) Defendant owes a legal duty to the Plaintiff; (2) Defendant breached that duty; (3) Defendant's breach legally caused an injury to Plaintiff; and (4) damages resulted from the injury. *Sexton v. U.S.,* 132 F.Supp.2d 967, 974 (M.D. Fla. 2000): *Clampitt v. D.J. Spencer Sales,* 786 So.2d 570, 573 (Fla. 2001). As noted above, Weinstock failed to make any request or argument for a default judgment on her negligence claim, despite the Court specifically addressing it at the May 1,

2020 hearing. (*See* Doc. 28). Further, Weinstock again failed to make any mention of her negligence claim in her Supplemental Memorandum. (*See* Doc. 35).[6] Therefore, the undersigned concludes that Weinstock is not seeking a default judgment on her negligence claim on Count II. Significantly, although Weinstock alleges that Defendants "had a duty to accurately and timely file the 2014, 23015 [*sic*] and 2016 Form 1040 Income Tax Return for Plaintiff," she fails to allege how Defendants breached that duty. Weinstock does allege that "[a]s a result of the errors and omissions of Defendants, Plaintiff has incurred significant tax penalties and interest levied by the Internal Revenue Service." (Doc. 1 ¶ 20). However, Weinstock fails to detail what errors or omissions were made by Defendants. Thus, even if Weinstock included in the Motion (Doc. 28) an argument for a default judgment as to her negligence claim on Count II, the allegations in the Complaint would still likely be insufficient to grant such a request.

### IV. Conclusion

For the foregoing reasons, it is hereby

RECOMMENDED:

1. Weinstock's Motion for Default Judgment (Doc. 28) be DENIED WITHOUT PREJUDICE.

2. Weinstock be allowed thirty (30) days to amend her Complaint (Doc. 1).

---

[6] Additionally, Weinstock failed to articulate any further argument in support of her request for punitive damages even though the Court invited her to provide further briefing on the matter during the May 1, 2020 hearing.

13

      IT IS SO REPORTED in Tampa, Florida, on this 23rd day of July, 2020.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

## **NOTICE TO PARTIES**

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

cc:    Hon. Virginia Hernandez Covington
       Counsel of Record