UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CATHERINE WEINSTOCK,

       Plaintiff,

v.                                       Case No. 8:19-cv-2979-T-33AEP

JASEN LADAIR HARVEY,
       doing business as Harvey's Tax Service, and

CATHERINE HARVEY,
       doing business as Harvey's Tax Service,

       Defendants.

_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Catherine Weinstock ("Weinstock") initiated this action against Defendants Jasen Ladair Harvey ("Jasen Harvey") and Catharine Harvey ("Catharine Harvey") (collectively, "Defendants"), in their capacity doing business as Harvey's Tax Service, asserting claims for fraudulent preparation of a federal tax return and negligence (Doc. 1). After Defendants failed to appear, Weinstock moved for entry of defaults against each Defendant (Docs. 10 & 25), which the Clerk of Court subsequently entered (Docs. 13 & 26). Weinstock then moved for entry of a default judgment against Defendants (Doc. 28), which the district judge denied without prejudice (Doc. 37). Weinstock subsequently filed an Amended Complaint (Doc. 38), reasserting claims for fraudulent preparation of a federal tax return and negligence. Defendants again failed to respond. After obtaining defaults against Defendants (Docs. 48 & 49), Weinstock now moves for entry of default judgment against Defendants. For the following reasons, it is recommended that Weinstock's Second Motion for Default

Judgment (Doc. 50) be granted as to Count I, denied as to Count II, and denied as to Weinstock's request for an award of punitive damages.[1]

## I.   Background

Defendants operate a tax preparation business under the name of Harvey's Tax Service in Plant City, Florida.  In 2017, Weinstock retained the services of Harvey's Tax Service to assist with the filing of her 1040 Income Tax Return for the tax years of 2014, 2015, and 2016. In exchange, Weinstock paid Defendants $750 for the initial payment and agreed to pay Defendants a total fee based on 15% of the amount of the tax refund (Doc. 38, Ex. D).

In preparing Weinstock's tax returns, Weinstock alleges that Defendants utilized a fraudulent or negligent tax preparation scam based on the depository agreement of depository financial institutions and further utilized a process known as Creative Resource Financial Recovery ("CRFR") (Doc. 38, Ex. A-C; Doc. 38, ¶ 8).  Using the CRFR process, Defendants significantly increased the amount of the tax refund to be received from the Internal Revenue Service ("IRS").   Specifically, Weinstock received a tax refund notice from the IRS, dated December 11, 2017, indicating that the overpayment for her 2016 taxes totaled $157,472.  After a deduction of the unpaid tax balance owed by Weinstock, the IRS issued a refund to Weinstock in the amount of $137,637.16 (Doc. 38, Ex. E).

Subsequently, Weinstock received a Notice of Tax Due on Federal Tax Return ("Notice of Tax Due") from the IRS, indicating that the amount of tax due from Weinstock was $157,537, rather than the purported overpayment of $157,472, and that a penalty had been assessed against Weinstock in the amount of $31,507.40 (Doc. 38, Ex. F).  Upon receipt of the Notice of Tax Due, Weinstock contacted Defendants to inform them about the return of the refund and to

---

[1]  The district judge referred the matter for issuance of a Report and Recommendation (Doc. 51).  *See* 28 U.S.C. § 636; M.D. Fla. R. 6.01.

request that Defendants work out the issues with the IRS (Doc. 38, Ex. G).  Following that, Weinstock received a Notice of Jeopardy Levy and Right of Appeal ("Notice of Jeopardy Levy") from the IRS (Doc. 38, Ex. H).  The Notice of Jeopardy Levy stated that the IRS determined that Weinstock had an unpaid balance in the amount of $198,264.26, plus statutory additions in the amount of $1,855.15, for a total levy in the amount of $200,119.41 (Doc. 38, Ex. H & I).

As a result of the actions and misrepresentations of Defendants, Weinstock incurred significant tax penalties and interest levied by the IRS and additionally required the assistance of other tax professionals, at significant expense to Weinstock, to reach a resolution with the IRS.  Accordingly, Weinstock sent a demand letter to Jasen Harvey requesting the return of fees and damages from Defendants due to their actions and misrepresentations in preparing Weinstock's federal tax return (Doc. 38, Ex. J), but Jasen Harvey responded with a "conditional acceptance" that included his own demand for three times the amount that Weinstock demanded and other relief (Doc. 38, Ex. K).

Weinstock then initiated the instant action alleging claims for fraudulent preparation of a federal tax return and negligence and seeking an award of compensatory damages, punitive damages, attorney's fees, and costs (Doc. 1).  After Defendants failed to appear, Weinstock moved for default judgment against Defendants (Doc. 8).  The district judge denied that motion, noting that Weinstock failed to first obtain a clerk's default, as required under both the Federal Rules of Civil Procedure and the Local Rules for the Middle District of Florida (Doc. 9).  Accordingly, Weinstock moved for entry of clerk's defaults against each Defendant (Docs. 10 & 11).  Upon consideration, the district judge granted the clerk's default against Jasen Harvey but denied the clerk's default as to Catharine Harvey (Doc. 12).  In doing so, the district judge indicated that Weinstock did not meet her burden of demonstrating service was adequate as to

3

Catharine Harvey and so directed Weinstock to submit a status report regarding her efforts to effect service of process upon Catharine Harvey.

Subsequently, a clerk's default was issued as to Jasen Harvey (Doc. 13).  Weinstock then issued a new summons to Catharine Harvey (Doc. 15).  Weinstock also submitted a one-page motion, with no legal or factual support or documentation, seeking entry of a default judgment against Jasen Harvey (Doc. 17).  Upon referral, the undersigned conducted a hearing on February 25, 2020, at which the Weinstock's counsel appeared.  During the hearing, the undersigned addressed the deficiencies with the motion and inquired as to whether Weinstock would prefer to wait until she effected service upon Catharine Harvey before renewing the request for default judgment, as issues regarding joint and several liability would need to be addressed.  Following the hearing, the undersigned denied without prejudice the request for entry of a default judgment against Jasen Harvey and stated that any renewed motion shall include proper supporting documentation and citations to legal authority, including with respect to the issue of several and joint liability, as discussed during the hearing (Doc. 23).

Following that, Weinstock moved for entry of a clerk's default against Catharine Harvey after she again failed to appear (Doc. 25), which the Clerk of Court subsequently entered (Doc. 26).  After entry of the defaults against Defendants, the district judge directed Weinstock to move forward with her motion for default judgment without delay (Doc. 27).  To that end, Weinstock sought entry of a default judgment as to both Defendants (Doc. 28).  Namely, she sought a default judgment in the amount of $373,741.20, plus interest, for the following:

| | |
|---|---|
| Legal fees incurred associated with the IRS | $29,800.00 |
| Penalties paid to the IRS | $31,507.40 |
| Interest paid to the IRS | $19,937.90 |
| Fees Paid to Defendants | $12,190.00 |
| Subtotal | $94,435.30 |
| Treble damages due to fraud | $280,305.90 |
| Total amount of claim | $373,741.20 |

4

(Doc. 28, Ex. B).  The previous figures, which are copied verbatim from Weinstock's Affidavit in Support of Motion for Default Judgment (Doc. 28-1), include a mistake that the undersigned will address for purposes of clarifying the compensatory damages in this action.  Weinstock appears to have improperly calculated the "Subtotal" figure, as a proper calculation yields a subtotal of $93,435.30 as opposed to the $94,435.30 figure provided by Weinstock.  Further, Weinstock appears to have calculated its alleged "Treble damages due to fraud" by multiplying what should have been its "Subtotal" of $93,435.30 times three to arrive at treble damages of $280,305.90.  Weinstock then combines the "Subtotal" and "Treble damages due to fraud" to arrive at its "Total amount of claim" of $373,741.20.

Upon review of the motion, the undersigned conducted another hearing on May 1, 2020.[2]  During the hearing, the undersigned noted several deficiencies with the allegations in the Complaint and with the motion.  For instance, the undersigned indicated that the allegations in the Complaint did not establish the elements of fraud nor met the specificity requirements for pleading a claim of fraud; the motion did not address the claim for negligence and, irrespective, the allegations in the Complaint did not establish a duty that Defendants owed to Weinstock, which is a necessary element of a negligence claim; and Weinstock sued Defendants under fictitious names yet provided no legal authority or argument as to whom the Court should enter judgment against.  Weinstock and her counsel argued that neither the Complaint nor the motion were deficient.  The undersigned then provided an opportunity to Weinstock to either proceed on an amended complaint or to supplement the motion to address the undersigned's concerns and the noted deficiencies.  One month lapsed since the hearing, yet Weinstock failed to take any further action.

---

[2]  The undersigned set the first motion for a hearing on April 24, 2020, but neither Weinstock nor her counsel appeared for that hearing.  As a result, a second hearing was scheduled on the motion, at which both Weinstock and her counsel appeared and presented oral argument.

Upon consideration, the undersigned issued a Report and Recommendation to the district judge, outlining several deficiencies and recommending that the motion for default judgment be denied (Doc. 36).  Weinstock did not submit any objections to the Report and Recommendation.  Accordingly, the district judge accepted and adopted the Report and Recommendation and denied Weinstock's motion for default judgment without prejudice (Doc. 37).  In addition, the district judge permitted Weinstock to file an amended complaint within 30 days.

In accordance with the district judge's directive, Weinstock submitted her Amended Complaint, again asserting claims for fraudulent preparation of a federal tax return and negligence (Doc. 38).  Weinstock added numerous new allegations in her Amended Complaint to bolster her claims.  Specifically, Weinstock alleged that Defendants fraudulently claimed that Weinstock could utilize bank deposits made in prior years to obtain tax refunds, as supported by an e-mail from Catharine Harvey to Weinstock on January 4, 2017 (Doc. 38, Ex. A). Weinstock also alleged that Catherine Harvey fraudulently claimed income from a real estate mortgage investment conduit ("REMIC") trust to obtain additional tax deductions for Weinstock. Weinstock also included a July 17, 2017 e-mail from Jasen Harvey to Weinstock wherein Jasen Harvey indicates that Weinstock's list of prior bank deposits will provide Weinstock with the benefit of a "huge refund" on Weinstock's tax return (Doc. 38, Ex. C).

To support her contention that Defendants knew or should have known that their conduct was fraudulent, Weinstock indicated that Defendants are registered with the IRS to prepare tax returns (Doc. 38, ¶ 13). She further argued that during the same time period as the alleged fraudulent conduct, the IRS specifically advised Defendants that there was no basis for a refund based on income generated by the REMIC trust (Doc. 38, ¶ 13). Weinstock mentions that in June 2017 – prior to the September 2017 Weinstock filings – the IRS interviewed Jason

Harvey (in an interview that also involved Catharine Harvey) and informed him that certain claims he made were false (Doc. 38, ¶ 13). Lastly, Weinstock included allegations of the large tax return preparation fee charged by Defendants as additional evidence of their fraudulent conduct (Doc. 38, ¶ 14).

Upon review of the Amended Complaint, the district judge issued an order directing Weinstock to submit a status report as to service of the Amended Complaint upon Defendants (Doc. 39), which Weinstock submitted (Doc. 40).  In the status report, Weinstock indicated that service had been effected by the United States Postal Service (Doc. 40).  The district judge then reminded Weinstock that proper service must be properly effected upon a party, with proof of service made by a server's affidavit, unless service is waived and directed Weinstock to show cause why the case should not be dismissed for failure to timely serve Defendants (Doc. 41). Subsequently, Weinstock properly served Defendants and obtained defaults against them (Docs. 48 & 49).  Weinstock again moves for entry of a default judgment against Defendants (Doc. 50).

## II.        Legal Framework

"When a defendant has failed to plead or defend, a district court may enter judgment by default." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015) (citing Fed. R. Civ. P 55(b)(2)); *cf. Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014) ("Rule 55, governing 'Default; Default Judgment,' applies specifically to situations where the defendant or counter-defendant has failed to answer.").  Following entry of a default under Rule 55(a), Federal Rules of Civil Procedure, a defendant is deemed to admit a plaintiff's well-pleaded allegations of fact, and, therefore, before entering a default judgment under Rule 55(b), a district court must ensure that the well-pleaded allegations in the complaint actually state a substantive cause of action and that a substantive, sufficient basis exists in the pleadings for the

particular relief sought. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (citation omitted). Although a defaulted defendant is deemed to admit the well-pleaded allegations of fact, the defaulted defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (citation and quotation omitted). Rather, entry of a default judgment is only warranted where a sufficient basis exists in the pleadings for the judgment entered. *Surtain*, 789 F.3d at 1245 (citation omitted).

Courts assess pleadings in conjunction with a default judgment by a standard "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Id*. (citations omitted). Namely, a court may enter a default judgment only where a pleading contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility exists "'when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Iqbal*, 556 U.S. 678 (quoting *Twombly*, 550 U.S. at 556). At all times, however, the decision to enter a default judgment remains within the discretion of the district court. *Hamm v. Dekalb County*, 774 F.2d 1567, 1576 (11th Cir. 1985) (citations omitted).

### III.   Discussion

#### A.   Count I: Fraud

As indicated, Weinstock moves for entry of a default judgment on her claim for fraudulent preparation of a federal tax return. In a diversity case, such as this, the substantive law of the forum state applies. *Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017) (citations omitted) ("'As a federal court sitting in diversity jurisdiction, we apply the substantive law of the forum state, in this case Florida, alongside federal procedural

law.'"). Accordingly, to determine whether Weinstock is entitled to judgment on her claim, the Court must look to Florida law.

In Florida, the elements for a claim of actionable fraud are: "(1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party." *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984); *see also Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998).

Though Florida substantive law applies to Weinstock's fraud claim, a pleading that contains allegations of fraud is subject to the heightened pleading standard of Rule 9(b), Federal Rules of Civil Procedure, which states that a party alleging fraud or mistake must state with particularity the circumstances constituting the fraud. *Linville v. Ginn Real Estate Co., LLC*, 697 F. Supp. 2d 1302, 1306 (M.D. Fla. 2010) (finding that the requirements of Rule 9(b) applied to claims for negligent misrepresentation and fraud under Florida law); *Haskin*, 995 F. Supp. at 1439 (discussing the requirements of Rule 9(b) in conjunction with claims of fraud under Florida law). To satisfy the heightened pleading standard of Rule 9(b), a complaint should set forth: (1) precisely what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (citations omitted).

Even after applying Rule 9(b)'s heightened pleading standards, Weinstock has alleged sufficient facts to state a plausible claim for fraud. The undersigned is required to accept

Weinstock's allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In doing so, the undersigned first finds that Weinstock has sufficiently alleged that Defendants made a false statement concerning a material fact – specifically, that Weinstock could utilize prior bank deposits and purported REMIC trust income as a basis to obtain an improperly inflated tax refund (Doc. 38, ¶ 11).  Weinstock attached exhibits to her Amended Complaint that specify the contents of Defendants' statements, indicate the time and place of such statements, and indicate the person responsible for making the alleged false statements (Doc. 38, Ex. A-D).  Further, Weinstock alleged that Defendants obtained a 15% commission based on the amount of the allegedly fraudulent refund (Doc. 38 ¶ 14).  Thus, Weinstock's allegations meet the heightened requirements of Rule 9(b).

Further, Weinstock alleged sufficient facts in her Amended Complaint to meet the remaining elements of fraud under Florida law.  As previously stated, those elements include (i) knowledge by the person making the statement that the representation is false; (ii) the intent by the person making the statement that the representation will induce another to act on it; and (iii) reliance on the representation to the injury of the other party. *Brooks*, 116 F.3d at 1371. Specifically, Weinstock alleged that Defendants were notified by the IRS that there was no basis for the claims made by Defendants, yet Defendants proceeded to inform Weinstock that her prior bank deposits and purported REMIC trust income were proper bases to obtain an inflated tax refund (Doc. 38, ¶¶ 12-13).  Further, Defendants' intent can be inferred not only from the fact that they stood to make 15% of whatever tax refund Weinstock obtained (Doc. 38, ¶ 14), but also from the fact that they encouraged Weinstock to provide the bank statements and REMIC trust information necessary to effectuate the alleged scheme (Doc. 38, Ex. A). Defendants were incentivized to maximize Weinstock's refund, as the amount of Defendants' commission was directly tied to Weinstock's refund.

Lastly, Weinstock appears to allege, although not explicitly, that she relied on the allegedly false statements made by Defendants.  Her reliance is evident by the allegation that Weinstock complied with Defendants' requests to "compile a list of all bank deposits" and that Weinstock received a "Notice of Tax Due on Federal Tax Return" in the amount of $157,537.00 (Doc. 38, ¶¶ 11, 16).  For these reasons, the undersigned finds that Plaintiff's Amended Complaint contains a sufficient factual basis to enter a default judgment as to Count I of the Amended Complaint for fraudulent preparation of federal tax returns. Therefore, the undersigned recommends that the district judge enter a default judgment as to the Count I fraud claim of the Amended Complaint.

### B.    Compensatory Damages

Weinstock seeks an award of liquidated damages in the amount of $93,435.30 (Doc. 50).  Such amount is supported by the record in Weinstock's Affidavit in Support of Motion for Default Judgment (Doc. 28-1) wherein Weinstock details her damages under penalty of perjury.   Specifically, Weinstock asserts that she incurred the following compensatory damages:

| | |
|---|---|
| Legal fees incurred associated with the IRS | $29,800.00 |
| Penalties paid to the IRS | $31,507.40 |
| Interest paid to the IRS | $19,937.90 |
| Fees Paid to Defendants | $12,190.00 |

(Doc. 28-1).  As previously discussed, these damages total $93,435.30.  Therefore, the undersigned recommends that Weinstock be awarded liquidated damages in the amount of $93,435.30.

### C.    Punitive Damages

Weinstock also seeks an award of punitive damages amounting to approximately threefold the amount of Weinstock's alleged compensatory damages.  "Punitive damages may be awarded when there is evidence that the defendant acted with malice, moral turpitude,

wantonness, willfulness, or reckless indifference to the rights of others." *Walsh v. Alfidi*, 448 So. 2d 1084, 1086 (Fla. 1st DCA 1984).  Although the allegations in Weinstock's Amended Complaint may be sufficient to form a basis for entitlement to punitive damages, this Court is unable to award punitive damages at this time.

A default admits a plaintiff's entitlement to liquidated damages under a well-pled cause of action, but not to unliquidated damages absent proper notice and a trial on damages. *Specialty Solutions, Inc. v. Baxter Gypsum & Concrete, LLC*, 2020 WL 2601576, *1 (Fla. 5th DCA May 22, 2020). "Further, a judgment rendered without a trial on unliquidated damages is void as to any unliquidated damages but valid as to any liquidated damages." *Id*.  Punitive damages are unliquidated in nature. *A-United Auto Rentals of Broward County, Inc. v. Lee*, 388 So. 2d 1091, 1092 (Fla. 3d DCA 1980).  As such, without a trial entry of a default judgement awarding punitive damages would be void.  Therefore, the undersigned finds it appropriate to recommend only an award of compensatory damages to Weinstock at this stage of the proceedings.

### D.    Count II: Negligence

Weinstock also asserted an alternative cause of action for negligence as Count II in her Amended Complaint (Doc. 38, at ¶¶ 22-25).  Specifically, Weinstock stated "[t]his is an alternate cause of action for damages caused by the negligence of the Defendants…" (Doc. 38, ¶ 22).  However, Weinstock does not seek a default judgment on this count (Doc. 50, ¶ 6). Paragraph 6 of Weinstock's Renewed Motion for Default Judgment titled "Negligence Cause of Action" states that such cause of action was in the alternative and that "[t]he relief requested by this motion is on the basis of the fraud cause of action" (Doc. 50, ¶ 6).  Therefore, the undersigned construes that Weinstock is only moving for a default judgment as to the Count I fraud claim.  Since the undersigned recommends that default judgment as to the Count I fraud claim be granted, and since Weinstock pleads Count II as an alternative to Count I and does not

appear to seek a default judgment as to the negligence count, the undersigned finds it appropriate to recommend that default judgment as to Count II be denied and that such claim be dismissed.

### IV.    Conclusion

For the foregoing reasons, it is hereby

RECOMMENDED:

1.    Weinstock's Second Motion for Default Judgment (Doc. 50) be GRANTED as to the Count I fraud claim of the Amended Complaint.

2.    A default judgment be entered in favor of Weinstock and against Defendants as to the Count I fraud claim of the Amended Complaint for compensatory damages in the amount of $93,435.30.

3.    Weinstock's request for punitive damages be DENIED.

4.    Weinstock's Second Motion for Default Judgment (Doc. 50) be DENIED as to the Count II negligence claim of the Amended Complaint and that the Count II negligence claim be dismissed.

IT IS SO REPORTED in Tampa, Florida, on this 13th day of November, 2020.


ANTHONY E. PORCELLI
United States Magistrate Judge

## **NOTICE TO PARTIES**

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).


cc:     Hon. Virginia Hernandez Covington
        Counsel of Record